The Fourth District Appellate Court of the State of Illinois has convened. The Honorable Robert J. Steigman presiding. Thank you, Mr. Bailiff. First case this afternoon is our case number 423-0247, between the State of Illinois versus Charles Walker. The appellant is Gregory Peterson. You are he, sir? Yes, sir. And for the appellee is Timothy Landrigan. You are he? I am. Okay, Mr. Peterson, you may begin your argument at this time. Thank you, Your Honor. May it please this court, counsel. As just stated, my name is Gregory Peterson. I work for the Office of the State Appellate Defender and I represent Charles Walker. My intention today is to stand on my brief as to issue two. I'll be happy to answer any questions this court should have, but the reason I requested oral argument was issue one. A person who is convicted of predatory criminal sexual assault has a reasonable expectation that there will be incriminating evidence introduced at their sentencing, that bad facts will be proffered and used to argue for a larger sentence. They have a constitutional right to expect that it's the prosecutor that would do that. Here, defense counsel introduces the worst piece of evidence for Mr. Walker. It's the moment where this becomes a possible maximum sentence, even though there is no indication in this record that the parties knew that 120 years was the aggregate maximum. That's why we see the prosecutor at one point saying this could justify even more. But what we have here is one of two possibilities, either of which is constitutionally deficient lawyering. There's a chance that Mr. Walker handed this report to his lawyer, his lawyer introduced it into evidence and then he read it. That is ineffective. There's also a chance that the lawyer read it and then chose to introduce this report. This report that describes Mr. Walker as a forceful rapist of multiple intellectually disabled children. That's ineffectiveness too. So because of the introduction of this report coming from Mr. Walker's counsel, we're asking this court to put Mr. Walker in the position that he would be put in with constitutionally effective counsel. And that means to be sentenced at a sentencing hearing at which this report does not appear. That means remand to a new judge. It means remand with a ruling that this report would be inadmissible in the future. And that's because that's what we would have had if his lawyer would have, basically if his lawyer would have fulfilled his basic constitutional obligations. We have in this record an explicit statement from the states that they were unaware that the report existed. We have an explicit statement from this judge that the judge found the report exceptionally aggravating in the context of a sentencing where the judge's discretion within that sentencing range is very wide ranging. So we already- I have a question for you with regard to the first relief you requested, which was vacating the sentence and sending this back to the trial court for a new sentencing hearing with a different judge. Back in November, the Illinois Supreme Court and People versus Webster held that as a matter of first impression, an appellate court lacked authority on the rule governing appeal in criminal cases to vacate a constitutionally valid discretionary sentence and remand for resentencing, absent a finding that the sentence was unlawful or an abuse of discretion. I suppose, pausing right there, is there anything unlawful or an abuse of discretion about the sentence the court imposed in this case? Your Honor, no. I believe the problem here is not about the exhibit being introduced. The problem is about who the exhibit was introduced by. Well, I think that's entirely appropriate, but I wanted to make sure you had an opportunity to so state, but given what the Supreme Court said in Webster and given that this court can't find that the sentence was unlawful or an abuse of discretion, how can we, consistent with Webster, reverse and remand and direct a new judge on resentencing here? Your Honor, I'll admit that I'm not fully familiar with the facts of Webster, but to the extent that that case would hold that there is no remedy whatsoever as long as the sentence is within the range, that seems to obviate the Sixth Amendment right to counsel at sentencing. Well, counsel, I've been at this a long time and I've never seen anything like this before. Your description of what happened here strikes me as entirely correct. And I don't understand that it's one of those things where one wonders what defense counsel could possibly have been thinking about introducing this matter. But the point is, nonetheless, that we have the Supreme Court of Illinois talking about how the appellate court doesn't have the authority under Rule 366 to direct the new judge and reverse the first district that had done so by my dad in a first degree murder case where the court essentially, as the first district put it out of a sense of fairness, thought that a wee man should be assigned to a different judge. And the Supreme Court in the animus decision by Justice O'Brien was, how do I put this, rather less than generous in her assessment that no, you don't have the authority to do it and don't do it. And it wasn't an oversight on our part and don't be looking to civil rules for authority when we have criminal rules, et cetera. So it seems to me the Webster case suggests we can't do what you're asking us to do, doesn't it? I'd like to clarify, Your Honor. Is the holding of Webster about remand at all or about remand to a different judge? Because that changes my answer. It's remand to a different judge. Okay. You can't do that. Well, Your Honor, I would say that to the degree that that is not available under Illinois rule, it's available under the federal constitution. And here you have Lafler versus Cooper from the United States Supreme Court. You have United States versus Morrison saying that a Sixth Amendment remedy needs to be individually tailored in a way that purges the taint of the mistake. And here with such a dramatic mistake and a finding on the record by this judge that the judge has found this report, the report's content exceptionally aggravating. I do think the Sixth Amendment empowers this court to do so even if Illinois state rules do not. And the second thing I'd like to point out is the Illinois Supreme Court has authorized remand to a new judge in the past, even when there isn't a finding of judicial bias. I believe the court's case of people against Jolly back in 2014, it was a state, it was an issue of the state adversarially participating in a Krankel hearing. That was the state's error, not the court's error. And the Illinois Supreme Court remanded to a different judge for the Krankel hearing. There is precedent for this, but I'm not arguing something based on the Illinois Supreme Court rules here. I'm arguing something based on the constitutional right to effective counsel. And there, again, I'll admit that I'm not 100% familiar with the details of Webster, but to the degree that the Illinois Supreme Court is saying that the rule doesn't allow you to, the federal Supreme Court is saying that the constitution requires you to. You need to design a remedy that actually fixes this specific problem on this set of facts. Then the other question is on remand, you're asking us to direct that the report that was brought out by the defense attorney that was containing all the prejudicial material may not be considered on remand, on resentencing? That's right, your honor. What's our authority for that? It's the same two federal Supreme Court cases, your honor, it's Lafleur and then it's Morrison. And the reason that this court can be certain about doing that and being appropriate under these facts is that we have this statement from the prosecutor on the record saying, this is the first time I'm seeing this. So we know that unlike some of the trial cases cited in my brief where there's an analysis of whether some exhibit, some piece of evidence would have come in anyway, here we have the state on the record saying, we didn't know about this. So- Are you familiar with any case ever in the state of Illinois? Or I'm happy to think about any case ever in jurisprudence in the United States where there's been a reversal or remand and on remand the state has been directed that it may not use evidence that was not suppressed or otherwise improper. In other words, to be more clear, Mr. Peterson, would you agree that if the state had come across this itself, if the prosecutor or prosecutorial agencies had come across this material, that there'd be no impropriety in trying to get this before the trial judge in sentencing? In trying to? Okay, there'd be possibly maybe privilege arguments or some other arguments, I don't know. But the point is there'd be no impropriety in their having the information trying to get it in front of the judge in sentencing. I think that's an allowable remedy for this court to choose, Your Honor. The question is essentially what the justices of this court believe will actually fix this violation. And to the extent that I don't have another case for you, in Your Honor's own words, this is not an error we've seen before. An error this drastic deserves a drastic remedy. And I do acknowledge that Remand, with no comment made about the admissibility of the exhibit, allowing new counsel on Remand to fight the admissibility, the ones that jump out at me right away are foundation and privilege. That is within the realm of possible remedies this court can choose. But the United States Supreme Court says, tailor the remedy to the violation. This is an egregious violation that deserves a sweeping remedy. What sentence did the defendant receive? He received 120 total. What sentence, if you know or can infer from the record, was being discussed or otherwise recommended to the court by the state as far as what they were seeking before the exhibit came up? They sought 120. So just a quick recap of the facts. The state asks for 120 total, constructed as 50, 40, 30, with an understanding that penetrative sex is perhaps the worst of that sort of scaling. The state asks for 50, 40, and 30. Then the report comes in. And what the state says is with this report, I think this would support even 55, 50, 45. That's statutorily impermissible, but the state decides to say, but we'll stick with our initial recommendation. And then that 50, 40, 30 is exactly what the court gives. So we know what the state's request was before the report came in. We don't have any indication of what the court was going to do prior to it seeing the report. But at the same time, we have the court's statement that is exceptionally aggravating, and we have the court's bit-by-bit connection of every aggravating piece of this report to the aggravating parts of the facts of this case. Council, just to confirm, and I understand your statement based on those comments made after the report was admitted by the state that they felt there was enough aggravating evidence there to argue longer sentences. The fact is the trial court imposed the cap. Yes. Okay. And I do acknowledge this is a different issue than if the report had come in and he'd gotten 130. And I appreciate that you've discussed the remedy, and I appreciate also the need to, under that case law, tailor the remedy. My question is, you're seeking to bar on remand the admissibility of the evaluation, but would the state also have the opportunity to explore whether they wanted to attempt to admit that same information through witnesses or otherwise? And you're not suggesting in any way that even with the bar of the evaluation, they can still not explore those other avenues. Is that correct? Yes, Your Honor. Speaking frankly, I think barring any discussion of the underlying facts of the Florida case or limiting the discussion of the Florida case to what came in at trial is also within the realm of remedies that this court is authorized to impose. But I've seen the tension already with asking for the report itself to be barred. And I think this is a realistic balance that will fix this remedy without going too far afield with regard to future cases. This is a horrendous exhibit that was introduced by the wrong person without ruling on which facts are suitable for discussion at sentencing at all. This court could simply say, we know that this avenue for getting this information in would never have happened barring counsel's mistake. We'll stop that. And so conceding at this point, it sounds if I'm understanding you correctly, that while that's your preference, but you would also agree that a remand, new counsel, and then letting the trial court make the determination of what would be appropriate to be admitted at the sentencing would be a reasonable avenue and would still address the injury suffered that you allege. I would say acceptable rather than reasonable, Your Honor. But I would say the constitution requires you to remand for resentencing with new counsel. Everything above that is this court's discretion as to how to fix this mistake. Counsel, there was a petition for rehearing the sentence that was presented and argued and denied. I'm just curious if at any point what defense counsel had to say about his introducing this report at sentencing and provide any clarification of his understanding as to why he thought this was appropriate. I don't recall anything specific as to that, Your Honor. I think the argument on the motion to reconsider was exceptionally short, but there isn't any... Frankly, in order to discuss what had happened, I think counsel would have to have alleged his own ineffectiveness. And I think he chose not to do that. Other than the trial court's hearing and considering this report that contained all this damaging material, did the trial court do anything wrong in its handling of this case? I mean, I do have issue two, Your Honor, which I think is... And I do think there is an error in finding him guilty when I think the evidence was insufficient, but I'm not pointing to any other improper factors that were considered at sentencing. I'm not saying that the court was not permitted to consider the Florida offenses, because this is a conviction for three sex offenses. The fact that he has prior convictions for sex offenses is of course something that the trial court would consider. The real problem here is this evaluation and in particular, who this evaluation came from. And I think that's enough to get him a new sentencing hearing on its own. Anything further, counsel? I'll reserve the rest for rebuttal unless there are more from you, Your Honor, or your colleagues. Seeing nothing further, you have an opportunity to address this again in a rebuttal, Mr. Landrigan. Thank you, Your Honor. This may please the court. You've been at this a long time, Mr. Landrigan, not quite as long as Justice Connacht and I, but have you got any theories on what happened in this case and what in the world the defense counsel could have been thinking? I was thinking what... I do, Your Honor. And honestly, I don't see the great importance of this particular document. I think it's been exceedingly over-exaggerated by a defendant in a desperate attempt to try to get a new sentence because counsel on appeal is in the same position as trial counsel. This guy's guilty. He's guilty of molesting a small child and ruining her life, and he's done it before. And he deserves just what he got, the maximum sentence. That's what the state recommended before this exhibit ever came to light. That's what the state recommended after the exhibit came to light. The court's comments with regard to the exhibit simply went to whether or not the exhibit's conclusion that this guy was not a threat of recidivism or doing it again, rather, wasn't true. That's what the court's concern was. And the court, I think, is very clear when it issues the sentence that it is concerned with letting this particular defendant out into society again so that he could repeat this type of offense. The pre-sentence investigation report clearly identifies that this particular defendant has already been convicted in the state of Florida of six different counts of this type of conduct. Clearly, we know that he has raped and molested young children in the past. So he is a threat to do it again. He's done it before. He's done it in this instance. And the court was convinced that if let free, he would do it again. And that's the reason for the maximum sentence. The court's comments in regard to defendant's exhibit number one is only to state that he does not agree with the psychiatric evaluator's conclusion that this man is not a threat to repeat this type of conduct. And so the court's only trying to point out to the defendant and defense counsel that this is not mitigating evidence, is that the conclusion made by that evaluator holds no weight because the premise of that evaluator's argument is an error. So I don't see this particular exhibit as being monumental or the key issue as defense counsel would argue on appeal that it was that led to this gentleman's maximum sentence. It had nothing to do with the state's recommendation. And I think it had very little, if anything, to do with the court's sentence. But counsel, if I may, for just a moment, the evaluation though directly contradicted, did it not, the defendant's testimony that it was just one victim in Florida, that it was perhaps, I mean, weren't there some direct contradictions that then are brought to light before the court based on this evaluation in addition to the fact that the victims in Florida had limitations and that was never presented previously throughout the trial for his own statements, was it? Well, Your Honor, I'm trying to recall exactly what the defendant's statement was to the court at the time of sentencing. Is that what you're referring to? During trial, I believe he testified there was only one victim in Florida and through the admission of this evaluation, that would have been directly at odds with the information in the evaluation where there were two victims. I don't recall, to be quite honest. I don't know if he testified to that in trial or not. I don't know why at this particular trial he would be testifying about previous offenses in the state of Florida. But if he did, I didn't take note of that. I didn't, when reviewing the transcript, I wasn't paying close attention to what the trial testimony was. I thought if we were concentrating on what the comments were after he was convicted and he did not cooperate with the pre-sentence investigation report, they had a subsequent supplemental report and where he partially cooperated, if you will, and gave some additional information. But the court noted in sentencing that he was uncooperative, which is his right. He doesn't have to state anything in that report. But nevertheless, I don't really think that that was a critical factor. The issue is, does this man, is he a threat to repeat this type of conduct? And I think defense counsel at trial was in a difficult position. This report concluded that he was not. And so I guess he thought he would give it a shot. That's all he had. When you don't have the facts on your side, you don't have the law on your side, you're in a tough spot. And so he thought maybe he could use this report to some advantage because the conclusion of the report was that he was not a threat and that he could conform his conduct in the future. Well, the sentencing court didn't agree with that and pointed out why that was not true and where the sentencing court was coming from in arriving at that conclusion. So the court, the sentencing court is just discounting that reported title. And that's the only reason that it's discussed at any length at all is to just say that the evaluator didn't have all the information, the conclusions made by the evaluator were inappropriate. And the court was convinced that this defendant would do it again. That's the reason. How do we know in these circumstances what a trial judge who's not yet expressed an opinion would do? Do we simply assume that the acts are so reprehensible and so heinous that he's gonna give what he believes is maxima or he's gonna automatically follow the state's recommendation? I mean, I understand your point, but at the same time, that requires us to assume that this is probably the sentence that the court was gonna impose anyway. And I don't know how you reach that conclusion unless you, you know, you might say, well, I've seen a lot of cases from Judge Feeney. He's a pretty, you know, he's a pretty stiff sentencer. He often follows the recommendation of state. Okay, we recognize that judges have tendencies, but how do we make that, how do we reach that conclusion here? Well, I agree, Judge. I mean, you never know what's in the mind of a sentencing judge. So I think we're looking for an abuse of discretion here. Was there a reason? So I think you're saying once the cat's out of the bag, how do we know it had no effect at all? Okay, well, if I understand Judge Stegman's critique of Webster, this is going to go back in front of the same judge and the state is going to be free to introduce any aspect of this information previously unknown to them or not. I would think, I mean, I think it would be quite an incredible direction by this court to suggest that the truth would be ignored or somehow hidden from the sentencing court. I'm not even talking about that. I'm just talking about the sentence itself. Not deciding that none of this can ever be admitted in the future. I'm saying the same judge, how do we know he would have issued this strict a sentence? You don't. We don't. Well, I don't think you, you know, you can never know. I mean- I understand Justice Stegman's point about Webster and I also understand Mr. Peterson's point, but I'm just focusing on, there's no way that we could know what effect that evidence had on the trial judge. That's correct, Judge, and that's not the first time this court has been put in that position. I think quite oftentimes the court has been put in that position. And the question then becomes, is the evidence that the court did have before it, was it sufficient to justify the sentence imposed by the court? And in this instance, yes, it was. I think you can be quite confident and comfortable in concluding that the evidence of this defendant's propensity to commit these crimes again in the future was sufficient to justify the sentence imposed by the court. And you may proceed. Thank you for answering my question. Sure. And if there's no further questions, you know, with regard to the issue too, I know it wasn't discussed at length, but I would just, it's the same argument I think I made in issue number one. Defendant reads the transcript and comes to one conclusion. I read to you the same transcript and come to a different conclusion. I guess the court can read the transcript just as well as counsel or I can and come to its own. I just, I think the court had before it more than sufficient evidence to conclude what it did. It heard the evidence. The parole was, you know, pretty straightforward, quite confident and certain as to the dates. I mean, he points in his brief and says there's some confusion about this oral sex as conjoined with forms of oral sex. I don't think there was. I think she said both instances of oral sex occurred when she was 12 years old. That's not confusing the two. It's not confusing the date. It's just combining them together. So, you know, in reading the transcript, couldn't be more clear. Same with the sentencing. I just don't think this report was significant in the judge's conclusions. He was concerned about this guy doing it again. And there's more than sufficient information in the pre-sentence investigation to support the court's conclusion that he was a threat to society. That's why he received a sentence he did. And if there's no further questions from the bench. Okay. Thank you, counsel. Mr. Peterson, you have anything in rebuttal, sir? Four things, your honor. First of all, Justice Lannert's question about the contradictions between the trial testimony and the information in the exhibit. To the extent that Mr. Londergan is unfamiliar with the record in this case, I would point to pages 12, 13, 22, and 23 of my opening brief where I raised this issue. According to his trial testimony, the reason Mr. Walker testified that he had the prior convictions is because he testified at his trial. These convictions were eligible for use in impeachment, so he fronted them by discussing them. But he said that the minor was 17, that there was one of them, that it was five counts of unlawful sexual activity, whatever that means, with a minor, whatever that means, and that the girl wasn't family. She was a family friend. The report says it's two minors. There was force. They were intellectually disabled. One of them was his stepdaughter. This isn't just taking information that the court already knew. This is taking information that Mr. Walker had set on the stand and contradicting it, controverting it, making it worse. This matters. Two, because we live in the future and are conducting this oral argument over Zoom, I am now familiar with the facts of People v. Webster. Justice Steigman, there's no claim of ineffective assistance of counsel raised in Webster, and that's the difference. Webster says there's no general argument of substantive excessive sentence the way there sometimes is in federal sentencing appeals. But here, the problem isn't that an improper factor was considered, and it's not that Mr. Walker's sentence is too high. It's that that sentence was arrived at in flagrant contravention of the Constitution. Third, Mr. Londrigan says that the trial court basically made a finding that the report was not mitigating at all, and that was it. That's not true. We have an explicit finding from the court that the report is exceptionally aggravating. Even if this court were to read the court's extensive discussion of the facts of the case in a way that would call that discussion not proof of aggravation, here we have the trial court directly saying that something was exceptionally aggravating. That's Strickland prejudice right there. But I'd like to close on Mr. Londrigan's statement that this guy's guilty. Issue one is not raising his guilt, and the Constitution and the right to counsel matters at sentencing. This court is not within its power to hold that Strickland, and frankly, Cronic in this context, don't apply at sentencing. They do. When you are convicted of a serious crime, you still have the right to constitutionally effective sentencing, and frankly, you could still get a lower sentence. It's not for Mr. Londrigan to say, or even for this court to say, or for me to say, what number the trial court should have arrived at. The problem here is who introduced this exhibit, and this court should fashion an effective remedy. Now, so we don't often have a situation like this, however, where you're asking us to take action that within a few months, last few months, November, the Illinois Supreme Court has said, we are without authority to take. I don't recall any prior situation quite like this, and is it your argument that there is always an exception to such a statement by the Supreme Court that if we're required by the federal constitution because of finding of a six-member violation, for instance, in this case, that somehow that trumps what the court recently said and Webster authorizing us to do what Court Webster said we can't do? Your Honor, I have a short answer and a long answer. The short answer is yes. I would analogize to plain error. If the rule governing plain error tells you that you don't have the authority to reverse something as second-pronged plain error, you could still reverse as Strickland if you find the error to be prejudicial. The fact that one particular- The Illinois Supreme Court hasn't said, no, you can't, which is a problem in this case. They said, no, you can't. You can't send it back to a new judge. They said, no, you can't under 615, Your Honor. And I'm really pointing here to the fact that there was no allegation in Webster of ineffective assistance of counsel. So you think that's the exception to what they said? Understanding that my time has expired, Your Honor, yes. I think this is a rare case where the problem is not even the evidence that was offered, but who offered it. Okay, well, thank you, counsel. Thank you both for your arguments. The court will take this matter under advisement and be in recess.